UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

John E. Hern,

Plaintiff,

vs. ORDER

Bankers Life
Casualty Company,

Defendant. Civ. No. 00-697 (JMR/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 12th day of January, 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Motion of the Plaintiff John E. Hern ("Hern") for an Order allowing him to Amend his Complaint, so as to plead a claim for punitive damages. A Hearing on the Motion was conducted on September 28, 2000, at which time Hern appeared by Sonia M. Sturdevant, Esq., and the Defendant Bankers Life Casualty Company ("Bankers Life") appeared by Ariane Schallwig Johnson, Esq.

For reasons which follow, the Plaintiff's Motion to Amend his Complaint, in order to assert a claim for punitive damages, is denied.

JAN 12 2001
CLERK

## II. Discussion

The Plaintiff commenced this action against his former employer, Bankers Life, for claims arising out of his employment with that insurance company. He began working for the company in August of 1997, as a commissioned sales person, and was later promoted to a position of Agent Development Associate. See, Hern Affidavit at ¶¶2-3, attached to Sturdevant Affidavit. During his tenure with the company, Hern worked out of the Duluth Branch Office. In September of 1999, he was demoted from his position as Agent Development Associate, and his employment with the company was fully terminated in October of 1999. Id. at ¶¶14-15.

Hern contends that he was terminated for a number of reasons, including his age, and because he participated in the investigation of a complaint of sexual harassment against a co-worker in the Duluth Office. As a result, Hern alleges that Bankers Life engaged in age discrimination, and in reprisal discrimination, in violation of the Minnesota Human Rights Act ("MHRA").

Hern also alleges a number of State common law causes of action. His first common law claim is for defamation, in which he asserts that Robert Stellflue ("Stellflue"), who was his supervisor in the Madison, Wisconsin, office, made defamatory statements about him, and his involvement with outside brokerage contracts -- statements which Hern alleges Stellflue knew to be untrue. Hern next

claims to have been the subject of a negligent infliction of emotional distress, which also arises out of the same circumstances that undergird his defamation claim. In addition, Hern asserts a claim for the tortious interference with a business relation, which is premised on an allegedly negative reference that was provided by Robert Harmsen ("Harmsen"), who was Hern's supervisor. Hern also alleges a breach of contract, which is based upon an agreement that he purportedly had with Bankers Life, and which is alleged to have required "just cause" for any employment termination. Lastly, Hern asserts a claim for an interference with a prospective economic advantage, which alleges that Hern was promised a promotion, by the new Regional Vice President of Bankers Life, Chris Mackey ("Mackey"), if the sales in the Duluth office reached an $80,000 goal during a one-month period. Hern claims that Harmsen discouraged the agents from reaching that goal and, later, Mackey unilaterally withdrew the promotion agreement.

Hern now seeks leave to plead punitive damages with respect to both his claims under the MHRA, and his State common law causes of action. Bankers Life opposes only the request to amend as it relates to Hern's State common law causes of action.[1]

---

[1]The pleading requirements of Minnesota Statutes Section 549.191 do not apply to claims brought under the MHRA. See, <u>DeRoche v. All-American Bottling Corp.</u>, 38 F. Supp.2d 1102, 1109 (continued...)

A. Standard of Review. As we have previously recounted, "'[i]n the Federal Courts of this District, the pleading of punitive damages claims, under causes of actions premised upon the Law of the State of Minnesota, must generally conform to the requirements of Minnesota Statutes Sections 549.191 and 549.20.'" Olson v. Snap Products, Inc., 29 F. Supp.2d 1027, 1034 (D. Minn. 1998), quoting Ulrich v. City of Crosby, 848 F. Supp. 861, 866 (D. Minn. 1994); see also, Bunker v. Meshbesher, 147 F.3d 691, 696 (8th Cir. 1998). Under Section 549.191, a plaintiff who seeks to assert a punitive damage claim must first obtain leave of the Court to do so, based upon a prima facie showing of entitlement. See, Ulrich v. City of Crosby, supra at 867. A plaintiff need not demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages.[2] See, Olson v. Snap Products, Inc., supra

[1](...continued)
n.5 (D. Minn. 1998), citing Backlund v. Cit of Duluth, 176 F.R.D. 316, 322 (D. Minn. 1997), citing in turn, Ulrich v. City of Crosby, 848 F. Supp. 861, 876 (D. Minn. 1994), Daines v. City of Mankato, 754 F. Supp. 681, 704 (D. Minn. 1990), and Engele v. Independent School District No. 91, 846 F. Supp. 760, 768 (D. Minn. 1994). Therefore, since Hern pled a claim for punitive damages in his original Complaint, relating to his claims under the MHRA, we need not address the propriety of amending his Complaint so as to add a punitive damages claim that is already there.

[2]Under the strictures of Section 549.191, "the Court reviews the evidence in support of a Motion to Amend as the Court would review a Motion for a Directed Verdict * * *." Ulrich v. City of Crosby, supra at 867; see also, Swanlund v. Shimano Indus., Corp., (continued...)

at 1034. As the Statute provides, a Court "shall grant a Motion to amend to allege punitive damages if it finds prima facie evidence in support of the motion." Bunker v. Meshbesher, supra at 696 [quotations omitted].

In order to establish a claim for punitive damages, a party must show, by clear and convincing evidence, that the Defendant acted with a "deliberate disregard for the rights or safety of others." Minnesota Statutes Section 549.20, Subdivision 1(a). The pivotal term "deliberate disregard" has been statutorily defined as follows:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the Defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> > (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
> >
> > (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minnesota Statutes Section 549.20, Subdivision 1(b).

---

[2](...continued)
Ltd., 459 N.W.2d 151, 154 (Minn.App. 1990). Thus, as we have observed in prior cases, in reaching such a determination, the Court makes no credibility rulings, and does not consider any challenge, by cross-examination or otherwise, to the plaintiff's proof. Id.

In substance, "[a] defendant operates with 'deliberate disregard' by acting with intent or indifference to threaten the rights or safety of others." Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1256 (8th Cir. 1994). As such, "[a] mere showing of negligence is not sufficient" to sustain a claim of punitive damages. Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan, 494 N.W.2d 261, 268 (Minn. 1992).

In addition, under the Section 549.20 standard, the Court "is required to search for evidence which is 'clear and convincing.'" Olson v. Snap Products, Inc., supra at 1036. "To be 'clear and convincing,' there must be 'more than a preponderance of the evidence but less than proof beyond a reasonable doubt.'" Ulrich v. City of Crosby, supra at 868, quoting Weber v. Anderson, 269 N.W.2d 892, 895 (Minn. 1978). Ultimately, the Court's independent search for clear and convincing, prima facie evidence, that the Defendant acted with a deliberate disregard for the rights or safety of others, requires the Court to do more than "rubber stamp" the allegations in the Motion papers. Id.; Swanlund v. Shimano Indus. Corp., Ltd., 459 N.W.2d 151, 154 (Minn.App. 1990).

2. Legal Analysis. Since Hern asks for leave to assert a punitive damages claim as to five separate, and somewhat distinct State law causes of action, we address his Motion, with respect to each claim, separately.

a. The Defamation Claim. Hern contends that he is entitled to plead punitive damages, arising from Stellflue's assertedly defamatory statements concerning Hern's involvement in "outside contracts." "It is * * * firmly established in Minnesota that punitive damages can be awarded in cases of defamation per se without proof of actual damage to the plaintiff." Stuempges v. Park, Davis & Co., 297 N.W.2d 252, 259 (Minn. 1980), citing Anderson v. Kammeier, 262 N.W.2d 366, 372 (Minn. 1977); Loftsgaarden v. Reiling, 126 N.W.2d 154 (Minn. 1964). To establish a claim for defamation, the Plaintiff must establish each of the following elements: (1) a false statement; (2) communication of the false statement to someone other than the plaintiff; and (3) a showing that the false statement would tend to harm the plaintiff's reputation or lower his esteem in the community. See, Thompson v. Olsten Kimberly Qualitycare, Inc., 33 F. Supp.2d 806, 815 (D. Minn. 1999); Ferrell v. Cross, 557 N.W.2d 560, 565 (Minn. 1997); Richie v. Paramount Pictures Corp., 544 N.W.2d 21, 25 (Minn. 1996); Bersch v. Rgnonti & Associates, Inc., 584 N.W.2d 783 (Minn.App. 1998).

Hern claims that Stellflue accused him of having brokerage contracts which were impermissible at Bankers Life, and that Stellflue conveyed that Hern had "outside contracts" to individuals at a convention of insurance agents in Las Vegas See, Hern Affidavit at ¶7, Attached to Sturdevant Affidavit; Plaintiff's Memorandum of

Law in Support of Plaintiff's Motion to Amend the Complaint, at 6 ("Plaintiff's Memorandum"). Hern has not, however, attempted to show how these statements were defamatory to his reputation. He does not contend that Stellflue told the individuals at the convention that the outside contracts were illegal, socially condemnable, or otherwise impermissible in the insurance industry as a whole.

Moreover importantly, Hern appears to admit that he did have such contracts at the time, but that they were inactive. Id. ("Mr. Hern at that time told Mr. Stellflue that those were inactive contracts and that he was entitled to his renewals, as is the standard in the industry."). Nonetheless, he offers no showing that Stellflue characterized the contracts as active or inactive. Hern only alleged that Stellflue commented, to several unidentified individuals, that Hern had "outside brokerage contracts." Thus, based on Hern's bare assertion that Stellflue told these individuals that he had "outside brokerage contracts," we cannot conclude that the statements, as recounted by Hern, were false.

As a consequence, since Hern cannot establish a prima facie case of defamation -- as he has not demonstrated the defamatory nature of the statement, or that the statement was indeed false -- it is axiomatic that he cannot sustain his burden to show that a punitive damage claim is warranted on his action for defamation.

Accordingly, the Plaintiff's Motion to Amend his Complaint, in this respect, is denied.

b. The Negligent Infliction of Emotional Distress Claim.

Hern contends that he is entitled to plead a claim of punitive damages because Stellflue's purported defamatory statement cause him emotional distress. To establish a claim of negligent infliction of emotional distress, a Plaintiff must show one of three circumstances: 1) he suffered from a physical injury; 2) he was within the zone of danger of physical impact, that he reasonably feared for his own safety, and that he suffered severe emotion distress as a result; or 3) "there has been a 'direct invasion of [his] rights such as that constituting slander, libel, malicious prosecution, seduction or other willful, wanton or malicious conduct.'" Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., 556 N.W.2d 557, 560 (Minn. 1996), quoting State Farm Mut. Auto Ins. Co. v. Village of Isle, 122 N.W.2d 36, 41 (Minn. 1963). In the last category, negligent infliction of emotional distress is an element of the damages arising from an intentional tort that constitutes a direct violation of the Plaintiff rights. Id. at 560.

Hern maintains that his defamation claim satisfies this last category of viable claims for negligently inflicted emotional dis-

tress. We disagree. As we have already noted, Hern has not satisfactorily made out a prima facie case of defamation, let alone shown by "clear and convincing evidence" that there was the "deliberate disregard" to sustain a punitive damages claim. Simply stated, since Minnesota law considers a negligently inflicted emotional distress claim as derivative of a defamation claim, in the absence of the competent showing of defamation, nothing can be derived. Therefore, the Plaintiff's Motion to Amend his Complaint, so as to plead a punitive damage claim, in the context of his emotional distress action, must be denied.

c. The Tortious Interference with Business Relations Claim.

Next, Hern argues that he is entitled to assert a claim for punitive damages, because of a negative reference given by Harmsen, which assertedly resulted in depriving Hern of an offer of employment. Under Minnesota law, Hern can allege two possible tortious interference claims: 1) tortuous interference with an existing contract; or 2) tortious interference with a prospective business relation or, as it is sometimes referred to, a prospective economic advantage. See, Guinness Import Co., v. Mark VII Distributors, Inc., 971 F. Supp. 401, 412 (D. Minn. 1997); Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 831 (8th Cir. 1996). Hern's tortious interference claim is of the second type.

An individual can assert a claim for the intentional interference with prospective contractual relations by establishing the following elements:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

H.J., Inc. v. International Tel & Tel Corp., 867 F.2d 1531, 1548 (8th Cir. 1989); see also, United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632-33 (1982), quoting Restatement (Second) of Torts, Section 766B (1979).

Here, Hern claims that Harmsen gave a negative reference concerning Hern's abilities as a manager which, Hern claims, resulted in his being denied employment. Thus, Hern claims that Harmsen, as an employee of Bankers Life, induced a third person not to enter into a prospective business relationship with Hern. As proof that Harmsen's statements were not true, Hern offers two letters from Hern's co-workers, which praise Hern's ability to be a good manager. Hern claims that Harmsen had seen those letters.

With respect to Harmsen's statement concerning Hern's managing ability, "a defamatory statement is not actionable if the comment was conditionally privileged and the privilege was not abused." Hunt v. University of Minnesota, 465 N.W.2d 88, 92 (Minn. App.

1991). As the Court in Hunt explained, "employment references are conditionally privileged because the public interest is best served by encouraging accurate assessments of an employee's performance." Id., citing Stuempges v. Park, Davis & Co., supra at 257. To overcome the privilege, a Plaintiff must show common law malice, which the law defines as "'actual ill will, or intent to causelessly or wantonly injure the plaintiff'" Id., quoting Karnes v. Milo Beauty and Barber Supply Co., 441 N.W.2d 565, 568 (Minn.App. 1989).

Hern has not shown that Harmsen's statement was made with malice. Harmsen's opinion of Hern may have differed from those of Hern's co-workers, but that difference of view does not equate with malice, and Hern has not shown that Harmsen did not hold the opinion that he had expressed. Thus, Hern has not show the necessary malice to overcome the conditional privilege which attaches to employee references and, consequently, he has failed to show the "deliberate disregard" which is essential to a punitive damages claim. Therefore, the Plaintiff's Motion to Amend his Complaint, so as to assert a punitive damage claim for a tortious interference with business relations, arising from an assertedly negative reference provided by Harmsen, is denied.

d. The Breach of Contract Claim. Hern further contends that he is entitled to assert a claim for punitive damages, because of a breach of a contractual agreement which allowed

Bankers Life to only dismiss Hern for "just cause," and because Mackey retracted a purported oral agreement to promote Hern, if Hern were successful in achieving $80,000 in premiums in one month. Hern maintains that, when he advised Mackey that he was in the process of achieving that goal, Mackey "breached his promise and failed to allow Mr. Hern to complete the terms and conditions of that agreement." Plaintiff's Complaint, at p. 9, ¶42. Hern's effort to plead a punitive damage claim, arising from these asserted breaches of contract, need not long detain us.

"Punitive damages are not available for breach of contract, only when an independent tort accompanies a breach of contract may a plaintiff seek punitive damages." Pine Valley Meats, Inc. v. Canal Capital Corporation, 566 N.W.2d 357, 364 (Minn.App. 1997), citing Molenaar v. United Cattle Co., 553 N.W.2d 424, 428 (Minn. App. 1996). As explained by the Minnesota Supreme Court:

> In general, extra-contractual damages, including those for emotional distress, are not recoverable for breach of contract except in those rare cases where the breach is accompanied by an independent tort. Olson v. Rugloski, 277 N.W.2d 385, 388 (Minn. 1979); Haagenson v. National Farmers Union Property and Cas. Co., 277 N.W.2d 648, 652 (Minn. 1979); Beaulieu v. Great Northern Ry. Co., 103 Minn. 47, 53, 114 N.W. 353, 355 (1907). The accompanying independent tort must be willful. Olson, 277 N.W.2d at 388. That is, it must support the extra-contractual damages in its own right as a tort. See Barr/Nelson, Inc. v. Tonto's, Inc., 366 N.W.2d 46, 52-53 (Minn.

> 1983). Thus even a malicious or bad-faith motive in breaching a contract does not convert a contract action into a tort action sufficient to support an award of emotional distress damages, Haagenson, 277 N.W.2d at 652, or other extra-contractual damages, such as punitive damages. Moore v. John E. Blomquist, Inc., 256 N.W.2d 518, 518 (Minn. 1977); Wild v. Rarig, 302 Minn. 419, 440-42, 234 N.W.2d 775, 789-90 (1975), cert. denied, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976).

Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., supra at 561. Here, our analysis of the Plaintiff's breach of contract claim is necessarily adumbrated, for none of the independent torts, which are alleged by the Plaintiff, are related to the asserted breach of contract. Accordingly, the breach of contract action will not, independently, sustain a claim for punitive damages, and the Plaintiff's Motion to Amend, in this respect, is denied.

e. The Interference with Prospective Economic Advantage Claim.

Lastly, Hern contends that he is entitled to assert a claim for punitive damages, due to Harmsen's and Mackey's interference with his prospective advantage,[3] because they blocked

---

[3]We benignly overlook the Plaintiff's dual effort to treat, for some purposes, the "agreement," that he purportedly had with Mackey, as being a "contract," or a "prospective advantage," however it might best suit his needs. We seriously doubt that the interference with a prospective advantage action was intended to duplicate the same result as would be obtained through a breach of contract claim. In the area of employment law, multiplicity in the causes of action abound, and we have no need now to determine whether, under the facts here, the two causes of action are co-
(continued...)

Hern from receiving a promotion that was promised by Mackey, if Hern had reached a certain sales goal. "To prevail on [a] claim for interference with prospective economic advantage, [the plaintiff] must prove that [the defendant] intentionally committed a wrongful act that improperly interfered with [plaintiff's] prospective business relations." Guinness Import Co., v. Mark VII Distributors, Inc., supra at 412.

Hern argues that Mackey promised a promotion if the sales in the Duluth Office reached $80,000 during a one-month period. Hern alleges, however, that Harmsen discouraged the agents in the office from reaching that goal, and that Mackey later unilaterally withdrew that promotion agreement. However, since Hern contends that the "agreement" was with Bankers Life, through Mackey, he cannot bring a claim for interference since a party to a contract cannot interfere with its own contract. See, Nordling v. Norther States Power, 478 N.W.2d 498, 505 (Minn. 1991) ("The general rule is that a party cannot interfere with its own contract."), citing Bouten v. Richard Miller Homes, Inc., 321 N.W.2d 895, 900-01 (Minn. 1982); see also, Petroskey v. Lommen, Nelson, Cole & Stageberg, P.A., 847 F. Supp. 1437, 1449 (D. Minn. 1994)("A party, however, may not

---

[3](...continued)
terminous, and not subject to joint litigation.

interfere with its own contract."), aff'd 40 F.3d 278, 280-81 (8th Cir. 1994). As the Minnesota Supreme Court has explained:

> If a corporation's officer or agent acting pursuant to his company duties terminates or causes to be terminated an employee, the actions are those of the corporation; the employee's dispute is with the company employer for breach of contract, not the agent individually for a tort. To allow the officer or agent to be sued and to be personally liable would chill corporate personnel from performing their duties and would be contrary to the limited liability accorded incorporation.

Nordling v. Northern States Power Co., supra at 505-06.

As we observed, in Petroskey, "[t]he Nordling Court continued, however, by noting that, in Bouten, it had recognized that a corporate officer or agent might be liable for 'tortious contract interference if he or she acts outside the scope of his or her duties.'" Petroskey v. Lommen, Nelson, Cole & Stageberg, P.A., supra at 1449-50. Here, however, Hern has asserted no claim against any employee or agent of Bankers Life -- only against Bankers Life, alone.[4]

---

[4]We have no reason to believe that, even if Harmsen had been sued by Hern, a viable claim for an intentional interference with a prospective advantage could be pled. Hern does not assert that the purported actions of Harmsen, in discouraging Hern's co-workers from assisting Hern in reaching his goal, brought any damage to him other than Mackey's reneging on the promise to promote Hern if the goal were reached. We, therefore, cannot find any damage to Hern, other than that which would flow from Mackey's purported breach of the oral agreement. As to Mackey, a suit against him, for the purported breach of contract would be futile, as the offer to promote -- if one were made -- arises within the course and scope (continued...)

Thus, since Hern cannot satisfy the requisites of a claim for an interference with prospective advantage, he may not assert a derivative claim for punitive damages on that cause of action.

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiff's Motion to Amend the Complaint [Docket No. 16] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

[4](...continued)
of Mackey's employment with Bankers Life. Since Bankers Life has been sued, on the basis of Mackey's purported breach of contract, we see no sustainable claim, on that score, against Mackey.