UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

John E. Hern,

Plaintiff,

vs. MINUTE ORDER

Bankers Life
Casualty Company,

Defendant. Civ. No. 00-697 (JMR/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 2nd day of April, 2001.

* * *

On March 29, 2001, the Court heard argument on the Defendant's Motion to strike two of the Plaintiff's expert reports or, in the alternative, for an enlargement of time in which to make their own expert disclosures. At the time of the Hearing, the Plaintiff John E. Hern appeared by Steven W. Schneider, Esq., and the Defendant Bankers Life Casualty Company appeared by Heather L. Wilson, Esq. For reasons expressed during the Hearing, and briefly reiterated below, we deny the Motion.

The Defendant has moved to strike two of the Plaintiff's expert reports; namely, the report of Dr. Van Etta, as the Defendant contends that it is inconsistent with what the Plaintiff's position has been throughout the case, and does not comply with our Pretrial

FILED APR - 2 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK A.H.

Order, or Rule 26, Federal Rules of Civil Procedure; and the Report of Dr. Estensen, as it does not comply with our Pretrial Order or Rule 26.[1] In regard to Dr. Van Etta's report, which states that the Plaintiff's termination from Banker's Life could have worsened his medical condition, the Defendant first contends that the report is inconsistent with what the Plaintiff's position has been throughout this case, and should therefore be stuck. According to the Defendant, the Plaintiff had, on numerous occasions, declared that he was not claiming physical injury as a result of any alleged emotional distress, and that he, alone, would testify regarding any physical manifestations of his emotional distress. For example, the Defendant asserts that the Plaintiff affirmatively declared, during a Hearing on September 28, 2000, when he associated his emotional distress claim to his defamation claim, that he had not suffered any physical injury, and had not been placed in the zone of danger. Moreover, throughout his discovery responses, the Plaintiff has contended that, if there would be testimony regarding the emotional distress, he would testify regarding any manifesta-

[1]According to our Pretrial Order, dated July 12, 2001, the Plaintiff was directed to disclose his expert opinions, with any pertinent reports attached, by February 15, 2001, which he did. The Defendant was initially supposed to serve its expert disclosures on March 15, 2001, but, by Order dated March 20, 2001, we modified that disclosure deadline in order to allow the Defendant until April 15, 2001, to produce its disclosures. We also extended the discovery deadline in this case until May 30, 2001.

tions of the emotional distress that were apparent to him. There, apparently, had been no mention of Dr. Van Etta, who is the Plaintiff's treating physician, actually testifying, until December 27, 2000. At that time and, once again, at a Hearing before this Court on January 8, 2001, the Defendant sought our Order directing the Plaintiff to provide medical authorizations in order that the Defendant could obtain the medical records of Dr. Van Etta and others, while the Plaintiff maintained that he was unsure as to whether Dr. Van Etta would testify, or whether he was going to claim a specific mental or physical condition. Nonetheless, we advised the Plaintiff that he could not "ride the fence" on this issue, and we ordered him to sign authorizations so that the Defendant could review his medical records. At this point, the Defendant did attempt to obtain the pertinent records, although some of the records have not been forthcoming.[2]

The Defendant received Dr. Van Etta's letter report on or about February 15, 2001. At that time, the Defendant contends, it first learned that the Plaintiff was claiming a physical injury,

---

[2]On January 19, 2001, in accordance with our Order, the Plaintiff provided medical authorizations for the Duluth Clinic and for St. Mary's Hospital. Nonetheless, the Defendant states that it learned on February 20, 2001, that the Plaintiff had also treated at St. Luke's Hospital, although it did not receive an authorization from the Plaintiff as to that medical treatment. At the time of the Hearing, the Defendant advised that the St. Luke's medical records have now been received.

and that the physical injury was said to have arisen from the emotional distress of the Plaintiff's termination, and not from the claimed defamation. The Defendant contends that the Plaintiff should not be able to raise this new issue so late in the case. The Plaintiff, while admitting that the circumstances surrounding his emotional distress claim have been confusing, contends that the Defendant knew about the potential of Dr. Van Etta testifying as early as mid-January of 2001, when this Court ordered him to produce releases for his medical records.

While we do not look favorably on the Plaintiff's delay in deciding on how to proceed with his damage claims, any prejudice resulting from that delay was cured by our Order of March 20, 2001, which allowed the Defendant to make its expert disclosures by no later than April 15, 2001, and which extended the discovery deadline to May 31, 2001.[3] Moreover, the Defendant knew as early as mid-January of 2001, when we directed the Plaintiff to produce his medical authorizations, that evidence of physical manifestations, assertedly from bouts of emotional distress, might be forthcoming. Finally, to the extent that Dr. Van Etta has expressed an opinion,

[3]As we expressed during the Hearing, if the Defendant should determine that it will need more time in order to prepare its expert disclosures -- especially if a Rule 35 examination becomes necessary -- it should reapproach the Court for a further extension of time.

that the Plaintiff could have suffered the physical manifestations because of the wrongful termination, in distinction to the claimed defamation, we cannot arbitrarily limit the Plaintiff in the opinions expressed by his treating physician. Therefore, since the Defendant will not be prejudiced by Dr. Van Etta's report, we deny the Defendant's Motion to Strike the report on this basis.

In addition, the Defendant contends that Dr. Van Etta's report should be stricken because it does not comply with our Pretrial Order, or with Rule 26, because the report did fully disclose the bases for the doctor's opinions, and his educational and professional background.[4] However, as the Plaintiff correctly ob-

---

[4]Our Pretrial Order requires the disclosure, for retained experts, of the following categories of information:

> a. The qualifications of the witness, including a list of all publications authored by the witness within the preceding 10 years;
>
> b. The compensation to be paid for the study and testimony;
>
> c. A listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years;
>
> d. A complete statement of all opinions to be expressed and the basis and reasons therefor;
>
> e. The data or other information considered by the witness in forming the opinions; and
>
> f. Any exhibits to be used as a summary of or

(continued...)

serves, Dr. Van Etta was not retained as an expert in this case, but is his treating physician and, in such a case, Rule 26 does not apply. Rule 26(a)(2)(B) contemplates that disclosures be furnished, and written reports be provided, for those experts who fall within the parameters of Rules 702, 703, or 705, Federal Rules of Evidence, and who are "retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." See, Rule 26(a)(2)(B), Federal Rules of Civil Procedure. Further, the Advisory Committee Notes to the 1993 Amendments to Rule 26(a)(2)(B)[5] make

---

[4](...continued)
support for the opinions.

[5]In pertinent part, the Advisory Committee Notes provide as follows:

> For convenience, this rule and revised Rule 30 continue to use the term "expert" to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters. The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement of a written report. By local rule, order, or written stipulation, the requirement of a written report may be waived for particular experts or imposed upon

(continued...)

plain that a "treating physician" need not prepare a written expert report.[6] Thus, since Dr. Van Etta is not required to submit a report under Rule 26, or our Pretrial Order, we deny the Defendant's Motion to Strike on this basis.

As for Dr. Estensen's report, the Defendant contends that it does not comply with our Pretrial Order, or Rule 26, because the report does not include the compensation that Dr. Estensen received for the report, and it does not identify the cases in which he has testified as an expert at Trial, or by deposition, within the preceding four years. In contrast, the Plaintiff points out that the cases, in which Dr. Estensen has been involved since February of 1999, are attached to the report.[7] See, Exhibit H to Defen-

---

[5](...continued)
additional persons who will provide opinions under Rule 702.

[6]Some cases hold to the contrary, at least when the treating physician intends to opine about matters such as causation, and permanent disability ratings -- which may not have been a part of the medical care given by that physician -- but those cases have not found general favor. See, e.g. Widhelm v. Wal-Mart Stores, Inc., 162 F.R.D. 591, 594 (D. Neb. 1995)("The treating physicians will only be allowed to testify about their treatment of the plaintiff and the fairness and reasonableness of their bills."); but see, Sprague v. Liberty Mut. Ins. Co., 177 F.R.D. 78, 80-81 (D.N.H. 1998)("[E]very court which has considered [Widhelm and similar cases] has either expressly declined to follow them or has distinguished or modified them.").

[7]It is not known whether Dr. Estensen failed to include any cases before February of 1999, or whether he was not involved in (continued...)

dant's Memorandum. As for the Dr. Estensen's compensation, the Plaintiff admits that the figure was inadvertently omitted from the report, and also advises that it has now been disclosed. As we noted at the time of the Hearing, the absence of these types of information are easily rectified and do not appreciably prejudice the Defendant. Accordingly, there being no prejudice to the Defendant, we deny its Motion to Strike Dr. Estensen's Report.[8]

NOW, THEREFORE, It is --

ORDERED:

1. That the Defendant's Motion to Strike [Docket Nos. 27 and 29] is DENIED.

2. That the Defendant's Motion for Enlargement of Time [Docket Nos. 27 and 29] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

---

[7](...continued)
any cases prior to that date.

[8]We also deny the Defendant's Motion for an enlargement of time, as that issue was resolved in our earlier Order of March 20, 2001, which extended the deadlines, that were challenged by the Defendant, to the full extent that the Defendant requested, and for which good cause was shown.